**RECORD NO. 14-4**

# IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

ALFREDO ROLANDO PRIETO,

*Petitioner - Appellant,*

v.

KEITH W. DAVIS,
Warden, Sussex I State Prison,

*Respondent - Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND

**OPENING BRIEF OF PETITIONER APPELLANT
ALFREDO ROLANDO PRIETO**

Cary B. Bowen, VSB No. 17313
Miriam B. Airington, VSB No. 78260
Bowen, Champlin, Foreman & Rockecharlie PLLC
1919 Huguenot Road, Suite 300
Richmond, VA 23235
(804) 379-1900 Telephone
(804) 423-2200 Facsimile

*Counsel for Petitioner-Appellant
Alfredo Rolando Prieto*

**TABLE OF CONTENTS**

Page

TABLE OF CASES AND AUTHORITIES..................................ii

JURISDICTIONAL STATEMENT........................................1

STATEMENT OF ISSUES............................................2

STATEMENT OF CASE..............................................2

SUMMARY OF THE ARGUMENT........................................3

STANDARD OF REVIEW.............................................3

    Standard Applicable to the Issuance of a Certificate of
    Appealability.............................................3

    Standard of Review on Petitioner's Claims.................5

LEGAL ARGUMENT AND AUTHORITY...................................5

    Claim V...................................................5

    Claim XIV................................................12

CONCLUSION....................................................17

CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND
LENGTH LIMITATION.............................................18

CERTIFICATE OF SERVICE........................................19

## TABLE OF AUTHORITIES

### CASES

*Atkins v. Virginia*,
536 U.S. 304 (2002)........................................6

*Barbe v. McBride*,
521 F.3d 443 (4th Cir., 2008)..............................6

Barefoot v. Estelle,
463 U.S. 880, 103 S. Ct. 3383 (1983).......................4

*Eddings v. Oklahoma*,
455 U.S. 104 (1982).......................................15

*Hall v. Florida*,
572 U.S. ___ (2014)....................................9, 10

*Hohn v. U.S.*,
524 U.S. 236, 118 S. Ct. 1969 (1998).......................5

*Lockett v. Ohio*,
438 U.S. 586 (1978).......................................15

*Miller-El v. Cockrell*,
537 U.S. 322, 123 S. Ct. 1029 (2003).......................5

*Savino v. Commonwealth*,
239 Va. 534 (1990)....................................15, 16

*Slack v. McDaniel*,
529 U.S. 473, 120 S. Ct. 1295 (2000).......................5

*Wiggins v. Smith*,
539 U.S. 510 (2003).......................................15

### STATUTES

28 U.S.C. § 2253...........................................3, 5
28 U.S.C. § 2253(c)(1)........................................5
28 U.S.C. § 2254.............................................3
28 U.S.C. § 2254(a)..........................................2

Va. Code Ann. § 19.2-264.3:1.1..........................10, 11
VA. Code Ann. § 19.2-264.3:1(A).........................13, 14

**U.S. CONSTITUTION**

Const. amend 5........................................3, 12, 17

In the
**United States Court of Appeals**
For the Fourth Circuit

ALFREDO ROLANDO PRIETO,
        Appellant,

v.

KEITH W. DAVIS,
Warden, Sussex I State Prison,
          Appelle

**APPELLANT'S OPENING BRIEF**

COMES NOW, the Appellant, ALFREDO ROLANDO PRIETO [hereinafter "Prieto"], through Counsel, and prays this Court to issue a Certificate of Appealability [hereinafter "COA"] in this case, and to grant his appeal from the district court decision denying his Petition for a Writ of Habeas Corpus.

**I. JURISDICTIONAL STATEMENT**

Prieto filed a Petition for a Writ of Habeas Corpus in the United States District Court for the Eastern District of Virginia [hereinafter "district court"] pursuant to 28 U.S.C. § 2254(a). The district court denied Prieto's Petition for a Writ of Habeas Corpus and granted the Warden's Motion to Dismiss. This appeal was timely filed. This Court has jurisdiction to hear this appeal pursuant to

1

U.S.C. § 2253, upon issuance of a certificate of appealability, which is sought herein.

## II. STATEMENT OF ISSUES

1. Prieto seeks to appeal the denial of Claim V, and submits that his execution is barred by <u>Atkins v. Virginia</u> and <u>Hall v. Florida.</u>

2. Petitioner seeks a to appeal the denial of Claim XIV, and submits that his fifth amendment right against self-incrimination was violated by the trial court's decision to allow the Commonwealth's mental health expert, Dr. Samenow, to inquire about the circumstances of unadjudicated offenses and to testify that he failed to cooperate because of his refusal to answer such questions.

## III. STATEMENT OF CASE

Prieto was sentenced to death on December 16, 2010 in the Circuit Court of Fairfax County upon resentencing from a 2008 conviction on retrial of two counts of capital murder, rape, grand larceny, and two counts of felonious use of a firearm while committing murder. Prieto filed a Petition for a Writ of Habeas Corpus [hereinafter "Petition"] pursuant to 28 U.S.C. § 2254 in the district court. [JA 12-100]  In response, the Warden filed a Motion to Dismiss. The Honorable Henry E. Hudson heard oral

arguments on Prieto's Petition and the Warden's Motion to Dismiss on June 11, 2014. The Court ordered further supplemental briefings following oral argument. The Court subsequently entered a Memorandum Order on August 5, 2014 [JA 237] granting the Motion to Dismiss, denying the Petition for a Writ of Habeas Corpus, and denying a certificate of appealability. Prieto timely noted his appeal [JA 238-240], and counsel was appointed on appeal.

## IV. SUMMARY OF ARGUMENT

Prieto asserts that he is entitled to a certificate of appealability on Claims V and XIV because his death sentence violates his privilege against cruel and unusual punishment as established by federal law, and because the trial court violated his fifth amendment privilege against self-incrimination. Prieto submits that reasonable jurists could debate both of these issues and resolve them in a different manner, and that therefore these claims warrant appellate review in this Court. These claims are subject to *de novo* review.

## V. STANDARD OF REVIEW

### Standard Applicable to the Issuance of a Certificate of Appealability

In determining whether to grant a COA, the Court of Appeals "look[s] to the District Court's application of the

AEDPA to petitioner's constitutional claims and ask[s] whether that resolution was debatable among jurists of reason."[1] Under federal law, a prisoner seeking a writ of habeas corpus has no absolute right to appeal to a denial of relief from district court.[2] A prisoner must first obtain a COA before an appeal may be entertained.[3] By statute, the threshold requirement necessary for the issuance of a COA is a "substantial showing of the denial of a constitutional right."[4] To obtain a COA, a petitioner must show that "reasonable jurists could debate whether (or for that matter, agree) the petition should have been resolved in a different manner or that the issues presented were 'adequate to preserve encouragement to proceed further."[5]

The threshold inquiry does not entail a full consideration of the factual and legal issues to be presented on appeal. Under Slack, a petitioner need not show that an appeal will succeed in order to obtain a COA. As such, a COA should not be denied merely because a

---

[1] Miller-El v. Cockrell, 537 U.S. 322, 326, 123 S. Ct. 1029, 1039 (2003).
[2] 28 U.S.C. § 2253.
[3] 28 U.S.C. § 2253(c)(1).
[4] See Slack v. McDaniel, 529 U.S. 473, 120 S. Ct. 1295 (2000); Hohn v. U.S., 524 U.S. 236, 248, 118 S. Ct. 1969 (1998).
[5] Slack supra (quoting Barefoot v. Estelle, 463 U.S. 880, 103 S. Ct. 3383 (1983).

4

petitioner has not yet demonstrated an entitlement to relief. In seeking a COA, a petitioner need not show that some jurists would grant habeas relief. A claim can be "debatable" even if, after review, reasonable jurists would conclude that petitioner may not prevail.

### Standard of Review on Petitioner's Claims

This Court reviews *de novo* a district court's denial of a petition without an evidentiary hearing.[6] The district court granted summary judgment to the Warden and denied Prieto's petition for a writ without an evidentiary hearing; therefore, his appeal of both Claim V and Claim XIV are subject to *de novo* review.

### VI. LEGAL ARGUMENT AND AUTHORITY

### Claim V

Prieto asserts that his execution is barred by the United States Supreme Court ruling in Atkins v. Virginia, which barred the execution of an intellectually disabled defendant.[7] This issue was raised both in the state courts and in district court. At the time of his conviction and death sentence, Virginia law defined mental retardation for

---

[6] See Barbe v. McBride, 521 F.3d 443 (4th Cir., 2008).

[7] Atkins v. Virginia, 536 U.S. 304 (2002). Note that the Atkins decision uses the term "mentally retarded," while the current accepted nomenclature is "intellectually disabled." The latter is used in this brief.

purposes of litigating this issue.[8]

The record below contains substantial evidence of Prieto's adaptive limitations. In his first trial, family and friends testified to the deficits in his conceptual and intellectual skills exhibited throughout his childhood and adolescence. Prieto was described as "very, very slow," "not very smart," not "develop[ed] like other children," and having the "mind of a child."[9]

Prieto's deficits in conceptual skills are also reported by a former teacher and indicated in his records.[10] Mitchell Hovey, Prieto's teacher at Pomona High School,

---

[8] "Mentally retarded" means a disability, originating before the age of 18 years, characterized concurrently by (i) significantly subaverage intellectual functioning as demonstrated by performance on a standardized measure of intellectual functioning administered in conformity with accepted professional practice, that is at least two standard deviations below the mean and (ii) significant limitations in adaptive behavior as expressed in conceptual, social and practical adaptive skills." Va. Code § 19.2-264.3:1.1.

[9] SHA 9684-85, 9726-27, 9777-78, 9825-26. Page references to the state habeas appendix are denoted "SHA" followed by a page number. References to the joint appendix from Prieto's first direct appeal are denoted "JAI" followed by a page number. References to the joint appendix from Prieto's second direct appeal are denoted "JAII."

[10] Prieto's passing grades in El Salvador do not indicate conceptual skills. At the time Prieto was in school, social promotion was not unusual, and students were graded in groups. SHA 9826.In addition, students who did not talk in class or cause problems (and were quiet like Prieto), would have been rewarded with good grades. SHA 9826.

explained that Prieto struggled to learn "basic language and math skills."[11] SHA 9769. *See also* App. 9770-71. Hovey had to teach Prieto basic math skills (addition, subtraction, multiplication, and division) when Prieto was sixteen. SHA 9771. Prieto also had trouble with his fine motor skills. SHA 9770-71. He made slow progress, had trouble following directions—even when Hovey repeated them—and was just "unable to learn." SHA 9771. Prieto was putting forth a good effort in school, so Hovey tried to encourage him by giving grades of "C" and "D," rather than "F," because Hovey did not want Prieto to drop out of school. SHA 9771-72. The fact that Prieto's abilities fell far below grade level are borne out by the assessment done at the California Youth Authority (CYA) in 1985, when Prieto was nineteen years old. It measured his overall abilities (in his native language) at a fourth-grade level. SHA 9305.

The identification of the etiology of mental retardation is not necessary to its diagnosis. However, it is instructive that a number of risk factors and potential etiological bases for mental retardation apply to Prieto,

---

[11] Hovey also explained that Prieto, who was not proficient in English, was placed in the English as a Second Language (ESL) program and not in Special Education because Prieto would not have been able to get language support in the Special Education classes. SHA 9768-69.

including "malnutrition, poor bonding, lack of proper stimulation, extreme family stress, poverty, lack of proper intervention, lack of early identification, and others." SHA 10022.

Because Prieto has demonstrated significantly sub-average intellectual functioning and significant limitations in adaptive behavior, originating before the age of 18 years, he is a person with mental retardation and his execution is barred by the Constitution.

While his petition was pending in the district court, the United States Supreme Court issued a ruling in <u>Hall v. Florida</u>, holding that it is unconstitutional for states to employ a rigid cut-off to define intellectual disability.[12] Freddie Lee Hall was convicted and sentenced to death decades ago for the kidnapping, rape, and murder of Karol Hurst.[13] At the time of his initial sentencing, Florida law did not allow for the presentation of intellectual disability in capital sentencing. After a subsequent law change, Hall was resentenced. At his resentencing, he presented "substantial and unchallenged evidence of intellectual disability," including school records and

---

[12] <u>Hall v. Florida</u>, 572 U.S. ___ (2014).
[13] <u>Id.</u>

8

testimony from family members and prior counsel.[14]   His resentencing predated <u>Atkins</u>, and Hall was sentenced to death despite strong evidence of intellectual disability. Following <u>Atkins</u>, Hall filed a motion challenging his execution as barred due to his intellectual disability.  At issue were his IQ test scores, which ranged from 60 to 80, though the admissible scores ranged from 71 to 80.  Florida relied upon the Florida statute requiring a threshold showing of an IQ below 70 for a defendant to claim an intellectual disability.[15]

The <u>Hall</u> decision is relevant to this case because Virginia employs a definition of mental retardation similar to that in the Florida statute just declared unconstitutional.[16]  It is noteworthy that the Court in <u>Hall</u> specifically pointed to Virginia as one of the only other

---

[14] Id.

[15] Id.

[16]    Va. Code Ann. §19.2-264.3:1.1 defines "mental retardation" as follows: "Mentally retarded" means a disability, originating before the age of 18 years, characterized concurrently by (i) significantly subaverage intellectual functioning as demonstrated by performance on a standardized measure of intellectual functioning administered in conformity with accepted professional practice, that is at least two standard deviations below the mean and (ii) significant limitations in adaptive behavior as expressed in conceptual, social and practical adaptive skills."

9

states with a fixed score cutoff identical to Florida.[17]  In the _Hall_ opinion, Virginia bears the unhappy distinction as being Florida's only companion in the strict-cutoff approach to defining intellectual disability.  The _Hall_ decision contains a lengthy and detailed explanation of the problems with relying too heavily on IQ test scores to define intellectual disability, and notes that "[t]reating the IQ with some flexibility permits inclusion in the Mental Retardation category of people with IQs somewhat higher than 70 who exhibit significant deficits in adaptive behavior."[18]  A less rigid approach is consistent with prevailing opinions in the medical and psychological communities.[19]

    _Hall_ is directly applicable to the Petitioner's claim. At his first trial, trial counsel presented evidence of mental retardation and argued that _Atkins_ barred the death penalty.  Counsel presented substantial evidence notably similar to the evidence presented at Hall's resentencing – testimony of family, friends, and former teachers regarding Prieto's developmental and intellectual deficits dating

---

[17] Id. (citing Va. Code Ann. §19.2-264.3:1.1).  The Court observed that "[E]very state legislature to have considered the issue after _Atkins_ –save Virginia's— and whose law has been interpreted by its courts has taken a position contrary to that of Virginia."
[18] Id.
[19] Id.

back to early childhood in El Salvador.   However, within the statutory framework then in place regarding the definition of mental retardation, the sentencing jury rejected this argument.   As such, the Atkins claim was not raised in subsequent state court proceedings until his petition for a writ of habeas corpus.

In the district court, Prieto asserted an Atkins claim in his initial petition, and with leave of court filed a supplemental brief asserting the applicability of the Hall decision.   During oral argument, Prieto argued that the Hall decision should be applied retroactively to his case, and that a procedural default resulting from his failure to exhaust the Atkins claim in state courts would constitute a manifest injustice. The district court rejected this claim, stating that there is no precedent in the Fourth Circuit or Supreme Court of the United States that explicitly finds that a petitioner may satisfy the actual innocence exception to procedural default if he demonstrates that he is ineligible for the death penalty under Atkins. Further, the district court found that Prieto could not show by clear and convincing evidence that no reasonable juror would have sentenced him to death because he is intellectually disabled.

The foundation of these rulings seems to be the

11

following: the district court was satisfied that because the Virginia statute allowed for a showing of sub-average intellectual functioning, the fact of the unconstitutional cutoff did not pollute Prieto's case. We disagree, and assert that Prieto's death sentence is unconstitutional.

## Claim XIV

Prieto's fifth amendment right against self-incrimination was violated by the trial court's decision to allow the Commonwealth's mental health expert, Dr. Samenow, to inquire about the circumstances of unadjudicated offenses and to testify that Prieto had failed to cooperate because of his refusal to answer such questions. Under Virginia Code Section 19.2-264.3:1(A), an indigent capital defendant may move for the appointment of "mental health experts to evaluate the defendant and to assist the defense in the preparation and presentation of information concerning the defendant's history, character, or mental condition . . . ." Subsection (F) offers a limited reciprocal right to the Commonwealth, who may then request "an evaluation concerning the existence or absence of mitigating circumstances relating to the defendant's mental condition at the time of the offense . . . ."

Unlike subsection (A), the Commonwealth's right under subsection (F) does not expressly encompass information

12

concerning the defendant's history, character, or mental condition at times *other* than that of the charged offense; rather, subsection (F) specifically refers only to "mitigating circumstances relating to the defendant's mental condition at the time of the offense."[20] If the trial court finds a defendant has failed to cooperate with the Commonwealth's evaluation, subsection (F)(2) permits the trial court to sanction the defendant: "the court may admit evidence of such refusal or, in the discretion of the court, bar the defendant from presenting his expert evidence."

Prieto exercised his statutory right under Virginia Code Section 19.2-264.3:1(A) and was evaluated by Dr. Mark Cunningham. In response, the Commonwealth moved for the appointment of Dr. Stanton E. Samenow to evaluate Prieto. Prieto argued that, if appointed, Dr. Samenow's evaluation must be limited to prevent him from "questioning [him] regarding the underlying offense conduct, the offenses in California and any other unadjudicated offenses."[21]

After the court appointed Dr. Samenow over Prieto's objection, the defense also filed a Memorandum Concerning

---

[20] Virginia Code Section 19.2-264.3:1(F)(1).
[21] JAII 5764.

Scope of Evaluation by Dr. Samenow, in which the defense asked the court to preclude Dr. Samenow from questioning Prieto concerning these underlying offenses.[22]    After hearing extensive argument, the trial court overruled Prieto's motion and refused to limit Dr. Samenow's evaluation.[23]

Given the absolute necessity of mitigation evidence to a capital defendant,[24] the refusal of the trial court to limit Dr. Samenow's evaluation presented an impossible choice for Prieto.    By conditioning the admission of Prieto's mitigating evidence related to his history and character on his willingness to abandon his fifth amendment rights and discuss his mental state at the time of the offense(s), the trial court applied Virginia Code Section 19.2-264.3:1 unconstitutionally.

In rejecting this claim, the Virginia Supreme Court pointed to Savino v. Commonwealth.[25]    In Savino, the defendant pled guilty to capital murder and robbery, but later attempted to raise a mental-status defense. In the Savino opinion, the Court recognized a distinction between

---

[22] JAII 6074-82.
[23] JAII 19744.

[24] See, e.g., Wiggins v. Smith, 539 U.S. 510 (2003); Eddings v. Oklahoma, 455 U.S. 104 (1982); Lockett v. Ohio, 438 U.S. 586 (1978).
[25] Savino v. Commonwealth, 239 Va. 534 (1990).

14

a mental-status defense, where it is well settled law that a defendant waives his fifth amendment privileges, and more generalized mitigation evidence in sentencing. The expert in Savino evaluated both the defendant's mental health at the time of the offense *and* evaluated him for future dangerousness, based on what the defendant himself put at issue. [26] The court wrote that because the defendant requested the evaluation and gave notice of his intention to rely on it as mitigating evidence, the statute did not violate his fifth amendment right.

The district court therefore found that the Virginia Supreme Court has not limited its holding in Savino to circumstances in which the defendant puts both mitigation and mental-status defenses at issue. The only critical inquiry, the district court opined, is whether defendant initiates his or her mental health examination.

The fact that Prieto initiated a mental health evaluation for mitigation should not be enough to bring his case under Savino's shadow. To be sure, the Virginia Code appropriately gives the Commonwealth access to an evaluation in order to develop rebuttal evidence. However, where a defendant limits his proposed mitigation evidence to his history and character and invokes his right to

---

[26] Id. at 541.

15

remain silent regarding criminal charges pending against him, the Commonwealth should not have been allowed to force the defendant to choose between his constitutional right to remain silent and his constitutional right to present relevant mitigating evidence. In other words, unless a defendant puts his mental state at the time of the offense at issue, the Commonwealth cannot credibly claim any rebuttal right that would supersede his right to remain silent. Thus, the Commonwealth should have been barred from forcing the defendant to answer questions about his offenses when his mental state was not at issue.

Dr. Samenow took every opportunity to describe Prieto's behavior in negative terms, including criticizing him for his desire to have the interview recorded.[27]

Dr. Samenow's testimony characterized Prieto as uncooperative, "difficult," "testy," and argumentative. In fact, Prieto was entirely cooperative with Dr. Samenow, except to the extent that Dr. Samenow's questions violated Prieto's constitutional right to remain silent.[28] (Dr. Samenow interviewed Prieto for eight and a half hours).

The introduction of testimony from a mental health expert portraying a criminal defendant in this manner is

---

[27] JAII 25654-55.
[28] JAII 25654.

16

highly prejudicial.  In Prieto's case, the introduction of such testimony was unwarranted because of his full cooperation within constitutional limits, on the advice of counsel.  Dr. Samenow admitted that Prieto discussed the fully adjudicated offense to which he had pled guilty, informing Dr. Samenow that he had pled guilty because he had been guilty.[29]  This testimony demonstrates that Prieto was cooperative insofar as his fifth amendment rights required, indicating that Dr. Samenow's testimony was punishment only for Prieto's legitimate exercise of his constitutional rights.  For these reasons, the trial court's refusal to limit Dr. Samenow's examination and admission of testimony that Mr. Prieto was uncooperative violated Prieto's fifth amendment right against self-incrimination.

## CONCLUSION

Appellant ALFREDO ROLANDO PRIETO respectfully submits that he has made a substantial showing of the denial of a constitutional right, and is entitled to a Certificate of Appealability.  Prieto requests that this Court hear oral argument on this case.  Prieto further prays this Court grant his appeal on Claim V and Claim XIV.

---

[29] JAII 24181-82.

17

ALFREDO ROLANDO PRIETO

BY COUNSEL

/s/ Cary B. Bowen

Cary B. Bowen, VA Bar No. 17313
Miriam B. Airington, VA Bar No. 78260
Mary Virginia Andraos, VA Bar No. 83601
Bowen, Champlin, Foreman & Rockecharlie PLLC
1919 Huguenot Road, Suite 300
Richmond, VA  23235
(804) 379-1900 Telephone
(804) 423-2200 Facsimile

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

The undersigned counsel hereby certifies that this brief complies with Fed. R. App. 28.1(e)(2) and Fed. R. App. P 32(a)(5)(B).

This brief has been prepared in Microsoft Word, Courier New, Font 12, and contains 3,372 words (514 lines).

This 25th day of November 2014.

/s/ Cary B. Bowen
Cary B. Bowen

18

## CERTIFICATE OF SERVICE

I have this day caused to be filed with the Clerk, United States Court of Appeals for the Fourth Circuit, the foregoing Opening Brief of Appellant via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to counsel below as follows:

> Alice Theresa Armstrong
> Office of the Attorney General of Virginia
> 900 East Main Street
> Richmond, Virginia 23219
> aarmstrong@oag.state.va.us

This 25th day of November 2014.

/s/ Cary B. Bowen
Cary B. Bowen

19